JOHN V. CHRAPA, Respondent-Appellant, v JAMES JOHNCOX, Individually and Doing Business as SUNNYSIDE CYCLE CENTER, et al., Defendants, and ALLIANCE ASSURANCE COMPANY LTD., Appellant-Respondent. (Appeal No. 1)

JOHN V. CHRAPA, Respondent-Appellant, v JAMES JOHNCOX, Individually and Doing Business as SUNNYSIDE CYCLE CENTER, et al., Defendants, and ALLIANCE ASSURANCE COMPANY LTD., et al., Appellants-Respondents. (Appeal No. 2)

Fourth Department, December 9, 1977

**APPEARANCES OF COUNSEL**

*Le Boeuf, Lamb, Leiby & Mac Rae (Sheila H. Marshall* and *Eric H. Moss* of counsel), for appellants-respondents.

*Paul William Beltz, P. C. (Russell T. Quinlan* of counsel), for respondent-appellant.

## OPINION OF THE COURT

CARDAMONE, J. P.

The question presented on this appeal is whether a plaintiff who has obtained personal jurisdiction over a nonresident defendant may attach the insurance obligations of the defendant's insurance carrier doing business in New York despite the fact that the insurance policy contains no duty to defend and was not in force at the date of the accident. We believe not.

Alliance Assurance Company Ltd. (Alliance) and Sun Alliance and London Insurance, Ltd. (Sun Alliance) appeal from an order at Special Term which denied their motion to vacate an order of attachment. The order appealed from also directed that Alliance and Sun Alliance defend the claim of plaintiff, John Chrapa, against Norton Villiers Limited and Norton Triumph International Limited (Norton) and it further determined that the representations made solely by Norton's attorney estopped Norton, Alliance and Sun Alliance from denying that Alliance is the insurance carrier for Norton.

In the main action plaintiff seeks to recover for personal injuries and property damage arising from a motorcycle accident which occurred on September 1, 1972. Plaintiff commenced the action alleging negligent design, maintenance, breach of warranty and strict liability in tort against the manufacturer (Norton) and intermediate dealers of the motorcycle which he purchased on the same day as the accident. He served Norton on January 2, 1975 and Norton appeared specially for the limited purpose of contesting jurisdiction. Norton contended that it has no presence in New York and is, therefore, not amenable to service under CPLR 302.

Plaintiff sought an attachment "to obtain jurisdiction over the defendant". In making his application, plaintiff stated that an action has been commenced by service of summons and verified complaint, and that all of the defendants, including Norton have been personally served but that Norton has made a motion to dismiss the complaint against it for lack of jurisdiction. Concerned about the running of the Statute of Limitations and without knowing whether the court would grant Norton's motion to dismiss, plaintiff moved "to obtain jurisdiction over the defendant (Norton) by use of Attachment of the insurance policy".

Special Term found that Norton was subject to personal

jurisdiction in New York under CPLR 302 (subd [a], par 3, cl [ii]). It also granted an order of attachment against Norton's liability carrier, Alliance and permitted expedited service of the summons and complaint and order of attachment on Norton pursuant to CPLR 308 (subd 5). Seeking to vacate the attachment, Alliance and Sun Alliance obtained an order to show cause on the grounds that Sun Alliance, and not Alliance, insured Norton on the date of the accident and, alternatively, that there is no attachable debt. Special Term, however, denied the motion and ordered Alliance and Sun Alliance to defend the claim of plaintiff against Norton. Special Term also concluded that Norton, Alliance and Sun Alliance are estopped by Norton's attorney's representation from denying that Alliance is the insurance carrier for Norton and that the defects in the service of the order of attachment did not prejudice Norton, Sun Alliance or Alliance and could be corrected by motion pursuant to CPLR 6223.

Affidavits made by officers of the two insurers indicate that Alliance is one of 11 or 12 separately incorporated British insurance companies owned entirely by Sun Alliance, a holding company which is also licensed to sell insurance in Great Britain. Alliance was incorporated in 1902, has been licensed to do business in New York since 1911 and does such business through Chubb and Sons, Inc., insurance brokers in New York City. On July 31, 1970, Alliance, through a British broker, issued a liability insurance policy to Norton in England. In January, 1971 the directors of Alliance and Sun Alliance decided that all United Kingdom risks "similar to that insured by Alliance" would be renewed in the name of Sun Alliance. Under a "special notice to insureds", the insured, by paying the amount due on the notice, indicated consent to this change. Coverage under the renewed policy was identical to that previously provided. The policy issued to Norton was one of those transferred by Alliance to Sun Alliance on August 10, 1971 and, according to the affidavits, Sun Alliance was solely responsible for all risks after July 31, 1971. Sun Alliance contends that it did no business in the United States and was not licensed to sell insurance in New York, although four of its subsidiaries concededly engaged in such activity. Further, that it has no office, bank account, employee, or telephone listing in the United States and writes no insurance in this country.

Special Term found that the notation on the Alliance policy

that it was in effect on "10.5.71" meant that the insurance was in effect on October 5, 1971 and concluded, therefore, that such fact contradicted the affidavits of the insurer's representatives and that Norton's attorney's representations to plaintiff that Alliance was its insurer estopped both Alliance and Sun Alliance from denying coverage.

At the outset, we observe that the notation 10.5.71 is in the European form which places the date before the month, and therefore, 10.5.71 indicates May 10, 1971, just as 31.7.71 as found in the policy denotes July 31, 1971. Special Term incorrectly estopped Alliance from denying coverage. Estoppel is generally not favored in the law and may not be invoked to create insurance coverage where none exists (Simpson v Phoenix Mut. Ins. Co., 30 AD2d 265, 268, affd 24 NY2d 262; Miller v American Eagle Fire Ins. Co., 253 NY 64, 67; Draper v Oswego Co. Fire Relief Assn., 190 NY 12). Since Alliance owed no obligation to Norton on September 1, 1972, there was no predicate obligation upon which in rem jurisdiction would attach. Accordingly, the order of attachment should have been vacated.

There remains the question raised by plaintiff's cross appeal as to whether Sun Alliance, the insurer of Norton at the time of the accident, was doing business in New York sufficient to be present in the State and a proper garnishee of the obligation to defend and indemnify Norton under Seider v Roth (17 NY2d 111); (Beja v Jahangiri, 453 F2d 959, 961; Simpson v Loehmann, 21 NY2d 305, 308-309; see O'Conner v Lee-Hy Paving Corp., — F Supp — (EDNY, decided Sept. 27, 1977). Special Term found that there was no proof in the record that Sun Alliance was doing business in New York through the activities of Alliance because there was no evidence that these corporations had common directors or common management. We believe it would have been better practice to have ordered a hearing on that question or permitted additional discovery of jurisdictional facts prior to making such determination (see Peterson v Spartan Ind., 33 NY2d 463, 467; Amigo v Marine Midland Bank-N. Y., 39 NY2d 391, 395; Noble v Singapore Resort Motel of Miami Beach, 21 NY2d 1006, 1008; Badger v Lehigh Val. R. R. Co., 45 AD2d 601, 603-604). While the cited cases concern CPLR 3211 motions to dismiss for lack of jurisdiction, the same policy considerations apply since the attachment was alleged to be for establishment of in rem jurisdiction.

■ We conclude, however, that no hearing is required in this case because even were Sun Alliance found to be present in New York, the policy of insurance issued to Norton by Alliance and renewed by Sun Alliance contains no obligation to defend or its equivalent and, accordingly, there is no attachable debt. Special Term found an explicit duty to defend present in the terms of the insurance policy and, further, implied the existence of such duty from the public policy of this State. We cannot agree. The insurance policy in question does not require the insurer to defend. Had the insurance policy contained such a duty to defend and the added provision that such obligation and policy would "self-destruct" where used as the sole basis for jurisdiction, we would not give effect to the latter provision because it would plainly be "designed to subvert the public policy of this State" *(Seligman v Tucker,* 46 AD2d 402, 407). Nor would we give effect to any provision incorporated in an insurance policy for the purpose of avoiding the operation of the principle of law declared and adopted in New York in *Seider* and *Simpson (Seligman v Tucker, supra,* p 406). However, in the instant case, there is no evidence that the absence of a duty-to-defend obligation in the British insurance policy was designed to subvert the public policy of New York. Of course, the absence of such an obligation to defend in an automobile operator's insurance policy presents a different question, since New York has a clearly announced policy relating to the obligation to defend in this context (Insurance Law, § 167, subd 2; Vehicle and Traffic Law, § 311, subd 4, par [a]; 11 NYCRR 60.1 [b]; *Rosado v Eveready Ins. Co.,* 34 NY2d 43).

■■ In *Seider v Roth* (17 NY2d 111, *supra),* the Court of Appeals upheld an attachment of an insurance policy's contractual obligations including a duty to defend because that obligation was due immediately upon notice of the accident (see *Glassman v Hyder,* 23 NY2d 354, 359; *Simpson v Loehmann,* 21 NY2d 305, 310, *supra;* see, also, *Matter of Riggle,* 11 NY2d 73, 76). Absent such an immediate obligation, there is no attachable debt (CPLR 5201, 6202; contra, *Hoops v Norman,* 46 AD2d 672, app dsmd 35 NY2d 957). Reservations as to the constitutionality of the *Seider* doctrine have been numerous (see, e.g., *Minichiello v Rosenberg,* 410 F2d 106, cert den 396 US 844 (esp. writings collected at p 108); *Donawitz v Danek,* 42 NY2d 138, 141; *Javorek v Superior Ct. of Monterey County,* 17 Cal 3d 629). Suffice it to say that the Court of

Appeals has stated that the doctrine explicated in *Seider* and *Simpson* should not be extended but, rather, confined to the limits dictated by *stare decisis (Donawitz v Danek, supra,* p 140; *Neuman v Dunham,* 39 NY2d 999, 1000). Further, a recent United States Supreme Court decision questions the continued validity of a State court's exercise of in rem jurisdiction based solely on the presence of a nonresident defendant's property within the State, absent minimum contacts applicable to in personam jurisdiction. *(Shaffer v Heitner,* — US —, 45 USLW 4849 [decided June 24, 1977].) Viewed in the context of these restraints, we see no reason to read into this foreign insurance policy a duty to defend for the sole purpose of permitting plaintiff to attach that duty-to-defend obligation and thus secure an additional basis for jurisdiction over defendant particularly where, as here, plaintiff has already acquired personal jurisdiction over Norton, the foreign defendant manufacturer of the motorcycle.

Inasmuch as we are reversing the denial of the motion to vacate the attachment on the basis that there is no attachable debt in New York, we do not consider the question of the alleged defects in the service of the order of attachment.

Accordingly, the order should be reversed and the motion to vacate the order of attachment should be granted.

HANCOCK, JR., DENMAN and WITMER, JJ., concur.

Appeal No. 1.—Appeal dismissed as academic.

Appeal No. 2.—Order unanimously reversed, without costs and motion to vacate order of attachment granted.