**In re AMBASSADOR GROUP, INC. LITIGATION.**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**AMBASSADOR GROUP, INC., et al., Defendants.**

**MDL No. 778 (RJD).
Civ. No. 85–2132.**

United States District Court,
E.D. New York.

May 10, 1990.

58

Kenneth A. Sagat, Andrew R. Simmonds, D'Amato & Lynch, New York City, for plaintiff.

Edward Yodowitz, Richard Simon, Neal Roher, Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants Ambassador Group, Inc., Arnold Chait, Doris Chait, Edward Chait, Douglas M. Auster, Joseph F. Maresca and Richard A. Tafro.

Richard B. Whitney, Fordham E. Huffman, Jones, Day, Reavis & Pogue, Cleveland, Ohio, and Columbus, Ohio, for defendant Gretchen Babcock, Com'r of Banking and Ins. for the State of Vt., as Receiver for Ambassador Ins. Co., Inc.

R. Mark Keenan, Anna S. Chako, Philippa M. Haggar, Anderson, Kill, Olick & Oshinsky, New York City, for defendant James P. Corcoran as Superintendant of Ins. of the State of N.Y. as Liquidator for Horizon Ins. Co., Inc.

Ralph C. Dawson, Fulbright Jaworski & Reavis McGrath, New York City, for defendants Daniel Hirsch, Winfield Jones and William Sterns III.

Robert A. Wolf, Judy Nathan, Robinson Silverman Pearce Aronsohn & Berman, New York City, for defendant Jay Wells.

Jules Ritholz, James C. Sherwood, Kostelanetz Ritholz Tigue & Fink, New York City, for defendants Sol Kroll and Edward M. Cameron, III.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

### BACKGROUND

Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") is the liability insurer of the directors and officers of Ambassador Group, Incorporated ("Ambassador Group"), an insurance holding company whose two principal subsidiaries, Ambassador Insurance Company and Horizon Insurance Company, are presently in receivership. National Union brought this statutory interpleader action, *see* 28 U.S.C. § 1335, to facilitate the resolution of claims that have been asserted against several directors and officers it insures.[1]

Defendants Arnold Chait, Doris June Chait, Edward C. Chait, Douglas M. Auster, Joseph F. Maresca, and Richard A. Tafro have moved for partial summary judgment on their first counterclaim. Defendants Sol Kroll and Edward M. Cameron, III have joined the motion, and defendant Jay Wells has moved for partial summary judgment on his counterclaim. The movants seek a declaration that National Union is obligated to pay on behalf of these individual defendants ninety-five (95) percent of the legal fees and costs, as they are billed, in defending certain actions which have been brought against them as officers or directors of Ambassador Group or its subsidiaries.

The motions require interpretation of certain provisions of the Directors and Officers Liability and Corporate Reimbursement Insurance Policy issued by National Union to Ambassador Group and its subsidiaries (referred to herein as the "Policy" or the "National Union Policy"). The insuring clause of the Policy provides for coverage

> against loss (as hereinafter defined) arising from any claim or claims which are first made against the Insureds, jointly or severally, during the policy period by reason of any Wrongful Act (as hereinafter defined) in their respective capacities as Directors or Officers.

Paragraph 2(c) of the Policy defines the term "loss" to include "costs, charges and expenses ... incurred in the defense of actions, suits or proceedings and appeals therefrom." Paragraph 4(e) of the Policy sets forth various exclusions, which include claims "brought about or contributed to by the dishonesty of the Insured." Paragraph 4(e) also provides, however, that:

> notwithstanding the foregoing the Insureds shall be protected under the terms of this policy as to any claims upon which suit may be brought against them, by reason of any alleged dishonesty on the part of the Insureds, *unless* a judgment or other final adjudication thereof adverse to the Insureds shall establish that acts of active and deliberate dishonesty committed by the Insureds with actual dishonest purpose and intent were

---

1. The factual background of this case is set forth in this Court's prior decision in this matter, reported at 691 F.Supp. 618 (E.D.N.Y.1988). At that time the Court deferred ruling on the instant motion until National Union deposited an additional $3 million bond, necessary to sustain this Court's jurisdiction over the interpleader action.

material to the cause of action so adjudicated. (emphasis added)

Thus, unless a judgment establishes that the acts of the Insureds were within the exclusion, National Union must provide coverage.

There is no dispute that the Insureds' legal expenses are covered "losses" as defined in paragraph 2 of the Policy. The question before the Court is whether the Policy requires National Union to provide contemporaneous, as-billed reimbursement of these expenses. For the reasons discussed herein, this Court answers this question in the negative.

■ National Union argues that Endorsement No. 3 to the Policy provides for a prioritization of payments which necessarily precludes the interim advancement of defense costs.[2] Paragraph A of Endorsement No. 3 provides, in pertinent part, that the Insurer shall pay 95% of all costs, charges and expenses, subject to the following conditions:

1. If a payment not in excess of the Limit of Liability has to be made to dispose of a claim, costs, charges and expenses shall be payable up to the Limit of Liability applicable under this policy.

2. If the claim is successfully resisted by the Insureds, costs, charges and expenses shall be payable up to but not exceeding the Limit of Liability under this policy.

National Union argues, and this Court agrees, that under paragraph A of the Endorsement the claims of third parties for injuries caused by the acts or omissions of the insured officers and directors are superior to the Insureds' claims for legal fees.

Payment for the Insureds' costs, charges and expenses is required only to the extent that payment for the third-party claim has not exhausted the Policy's proceeds. Obviously the interim reimbursement of legal fees could easily deplete the proceeds available to satisfy third party claims. To require such reimbursement contravenes the plain meaning of the Policy.

## THE OKADA DECISIONS

Movants rely principally on *Okada v. MGIC Indemnity Corp.*, 608 F.Supp. 383 (D.Hawaii 1985), *aff'd in pertinent part, rev'd in part*, 795 F.2d 1450 (9th Cir.1986) (*"Okada I"*), *amended and corrected*, 823 F.2d 276 (9th Cir.1987) (*"Okada II"*), in which a director and officer liability policy was held to require contemporaneous reimbursement of defense costs. Movants also point to *Pepsico Inc. v. Continental Casualty Co.*, 640 F.Supp. 656 (S.D.N.Y.1986), which based its decision, in part, on the District Court's opinion in *Okada*. For several reasons, however, the Court is not persuaded that *Okada* and *Pepsico* require the contemporaneous payment of legal fees in this case.

On its first occasion to address the issue (*Okada I*), the Ninth Circuit expressly determined that the policy before it was a "defense" policy (imposing on the insurer a duty to defend); it based this conclusion on the assertion that (i) under Hawaii law, insurers have a general duty to defend potentially covered claims unless such obligation is expressly excluded by the policy, and (ii) a provision of the policy attempted to disclaim such liability for potentially covered claims, but failed to do so as a result of ambiguities in its wording.[3] 795 F.2d at

---

**2.** Defendant Babcock, the Vermont Commissioner of Banking and Insurance, joins National Union's opposition to the instant motions.

**3.** On its face, the policy provision which the *Okada I* court characterized as an "attempt[ ] to contract out of the general rule that insurers have a duty to defend potentially covered claims", 795 F.2d at 1454, appears to be a straightforward reservation of discretion to advance, or not advance, payment for costs incurred by Insureds in connection with claims. *See* 795 F.2d at 1459 (Hall, J., dissenting). Sub-

stantially identical policy provisions were at issue in *Little v. MGIC Indem. Corp.*, 836 F.2d 789, 793 (3rd Cir.1987) and *Board of Educ., Yonkers City School Dist. v. CNA Ins. Co.*, 647 F.Supp. 1495, 1507 (S.D.N.Y.1986), *aff'd*, 839 F.2d 14 (2d Cir.1988). In *Little*, the Court conceded that the insurer's explanation of the policy provision as giving discretion to advance legal costs was "reasonable". 836 F.2d at 794. However, under Pennsylvania law (which governed in *Little*), if insurer and insured each advance a "reasonable" explanation of a policy, the provisions in question are to be construed against the insurer.

1454. Having determined that the policy at issue was a defense policy, the majority concluded that the policy required contemporaneous payment of legal fees.

This Court agrees with the dissent in *Okada I, see* 795 F.2d at 1457–60, and the district court in *Zaborac v. American Casualty*, 663 F.Supp. 330, 334 (C.D.Ill.1987), that the *Okada I* majority incorrectly read into the contract a duty to defend (both as a matter of law and as a question of contract interpretation), and that the *Okada I* majority's imposition of a duty to pay legal fees contemporaneously was erroneous. Indeed, the *Okada I* majority's result conflicts with the pre–*Okada* consensus that director and officer liability policies are not defense policies and generally do not require the reimbursement of legal expenses until the legal liability of the Insureds has been established. *See* W. Knepper, *Liability of Corporate Officers and Directors*, 642 (3d ed. 1978); J. Bishop, Jr., *The Law of Corporate Officers and Directors*, ¶ 8.06 (1981); Johnston, *Corporate Indemnification and Liability Insurance for Directors and Officers*, 33 Bus.Law. 1993, 2023 (1978); Note, *Practical Aspects of Directors' and Officers' Liability Insurance—Allocating and Advancing Legal Fees and the Duty to Defend*, 32 U.C.L.A. L.Rev. 690, 691 (1985). The *Okada I* majority neither acknowledges that it was departing from prior law nor succeeds in persuading this Court that its departure was appropriate.

The Ninth Circuit reconsidered its thinking in *Okada II*,[4] espousing a different theory but arriving at much the same result. In its revised opinion the Court did not hold that the policy imposed a duty to defend; the Court nonetheless interpreted the policy as requiring contemporaneous

payment of legal fees. In so ruling, the Court noted that the policy provided that a "loss" (which includes legal defense costs) "occurs" whenever the Insureds are "legally obligated to pay" on a covered claim. 823 F.2d at 280. The Court thus concluded that such language, *"in the absence of other provisions,"* expressed a general rule requiring the contemporaneous payment of legal costs. *Id.* (emphasis added). In addition, by cataloguing the several instances in the policy in which the word "expense" appears, the Court concluded that there was "ambiguity," that talismanic trait whose presence allowed the Court to apply Hawaii's "strict form of the rule of construction against the drafter of the contract" and therefore resolve doubts against the insurer. 823 F.2d at 281.

## NEW YORK LAW

Assuming *arguendo* that *Okada I* correctly interpreted Hawaiian law to impose a duty to defend, or that the definitions of loss and occurrence in the *Okada* policy can, without more, be construed as requiring the interim payment of legal fees, several aspects of *Okada's* reasoning nonetheless distinguish the result in that case from the instant action. First, this Court must apply the law of New York, not Hawaii; and New York law neither imposes a duty to defend *as a matter of law* nor requires the "strict form" of the rule of construction used in Hawaii.

1.  *The duty to defend as a matter of law*

■ There are isolated instances where New York law imposes a duty to defend as a matter of law. *See, e.g.,* 11 N.Y.C.R.R. 60.1(b) (motorist insurance). As a general

---

The court, on finding that the insured's argument that the policy, taken as a whole, imposed a contemporaneous duty to defend was also "reasonable", found the provision to be ambiguous as a matter of law. 836 F.2d at 794–95. In *CNA Insurance*, Chief Judge Brieant, applying New York law, read the provision to preclude a requirement of contemporaneous legal fees. Taken together, *Little* and *CNA Insurance* point up the weaknesses of *Okada I's* interpretations of the provision in question. In any event, the absence of such a "discretionary payment"

clause does not, expressly or by inference, impose a duty on National Union to pay legal expenses contemporaneously. In view of the absence of a comparable provision in the National Union Policy, the Court expresses no opinion on the *Little* court's suggestion that the presence of conflicting judicial interpretations of a policy provision is itself indicative of ambiguity. *Little,* 836 F.2d at 796.

4.  823 F.2d 276. Judge Hall, who dissented in *Okada I,* joined the majority in *Okada II.*

matter, however, New York law recognizes that whether or not an insurer has a duty to defend is to be determined from the language of the policy; in the absence of a policy provision expressly imposing a duty to defend, New York courts will not find such a duty. *Henderson v. Aetna Cas. & Sur. Co.*, 55 N.Y.2d 947, 449 N.Y.S.2d 178, 434 N.E.2d 247 (1982), *Chrapa v. Johncox*, 60 A.D.2d 55, 61, 401 N.Y.S.2d 332, 335–36 (4th Dept.1977).

Defendants have called this Court's attention to an opinion in *National Union Fire Insurance Company v. Ambassador Group*, Index No. 14284/88 (S.Ct., N.Y. Cty., June 20, 1989) (*reh'g denied*, Feb. 2, 1990) (Ciparick, J.), a suit involving the same insurance policy as is before this Court. In its opinion the New York Supreme Court appears to have imposed a duty to defend on National Union as a matter of law. This approach, as noted, runs counter to the general rule in New York. In support of its decision, the court cited two cases of the New York Court of Appeals. However, neither of those cases justifies such an outcome. In the first case, the Court of Appeals merely noted that the "insuring agreement undertook to defend" the claims at issue. *Ruder & Finn v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 666–67, 439 N.Y.S.2d 858, 859, 422 N.E.2d 518, 519 (1981). Thus, there was no question of imposing a duty to defend, since the policy in question did so explicitly. In the second case, the duty of the insurer to defend was "contractual", and not at issue. *Servidone Constr. Corp. v. Security Ins. Co.*, 64 N.Y.2d 419, 421, 423, 488 N.Y.S.2d 139, 140–41, 477 N.E.2d 441, 442–43 (1985). This Court is unaware of any holding of the New York Court of Appeals which either imposes a general duty to defend on liability insurers *as a matter of law* or which departs from the general rule that in

director and officer policies, there is no duty to defend.[5]

## 2. *Ambiguity and the rules of construction of insurance policies*

■ Under New York law,

[i]f the words [of a contract of insurance] are clear and unambiguous, they must be accorded their plain and ordinary meaning and the policy enforced as written; a court is not free to modify such terms by judicial construction.

*Francis v. INA Life Ins. Co. of N.Y.*, 809 F.2d 183, 185 (2d Cir.1987) (quoting *Government Employees Ins. Co. v. Kligler*, 42 N.Y.2d 863, 864, 397 N.Y.S.2d 777, 778, 366 N.E.2d 865, 866 (1977)). Importantly, New York's rule of construction plainly counsels against the "reach out and find an ambiguity" approach used in *Okada II. See, e.g., Sutro Bros. & Co. v. Indemnity Ins. Co.*, 264 F.Supp. 273 (S.D. N.Y.), *aff'd*, 386 F.2d 798 (2d Cir.1967); *Loblaw, Inc. v. Employers' Liab. Assurance Corp., Ltd.*, 85 A.D.2d 880, 446 N.Y. S.2d 743 (4th Dept.1981), *aff'd*, 57 N.Y.2d 872, 456 N.Y.S.2d 40, 442 N.E.2d 438 (1982). As one court recognized:

Ambiguity appears to be a disease to which insurance policies are peculiarly susceptible and no immunity from attack can be provided by the clearest language or the most unmistakable terms, if the result is not what the policyholder may have envisaged.... The fact that [the insured] may have contracted for coverage that was of little use to it at the time [of the loss] [sic] does not mean that it is entitled to more beneficial coverage which it did not contract for.

*Moshiko, Inc. v. Seiger & Smith, Inc.*, 137 A.D.2d 170, 176, 529 N.Y.S.2d 284, 288 (1st Dept.), *aff'd*, 72 N.Y.2d 945, 533 N.Y.S.2d 52, 529 N.E.2d 420 (1988) (quoting *Perth Amboy Drydock Co. v. New Jersey Mfrs.*

---

**5.** For reasons similar to those discussed in text, movants' reliance on *McGinniss v. Employers Reinsurance Corp.*, 648 F.Supp. 1263 (S.D.N.Y. 1986) is misplaced. The Court in *McGinniss* found that "[a]n insurer has a heavy duty to defend or pay for the defense of its insured", 648 F.Supp. at 1271, citing *International Paper Co. v. Continental Casualty Co.*, 35 N.Y.2d 322,

326, 361 N.Y.S.2d 873, 876, 320 N.E.2d 619, 621 (1974) as support. However, the policy at issue in *International Paper* expressly imposed a duty to defend on the insurer. 35 N.Y.2d at 324, 361 N.Y.S.2d at 874, 320 N.E.2d at 620. Neither *International Paper* nor *McGinniss* provide a basis for imposing a duty to defend as a matter of law.

*Ins. Co.*, 26 A.D.2d 517, 518, 270 N.Y.S.2d 819, 820 (1st Dept.1966) (Steuer, J., dissenting)).

■ In addition, in New York, courts are not to view the contract from the point of view of an easily befuddled or misled lay consumer. Rather, "it is well-established that '[t]he plain meaning of the policy language is not measured ... by the understanding of a layperson, but by the understanding of a person engaged in the insured's course of business.'" *Moshiko*, 137 A.D.2d at 176, 529 N.Y.S.2d at 288 (citing *American Home Prod. Corp. v. Liberty Mut. Ins. Co.*, 565 F.Supp. 1485 (S.D.N.Y.1983), *modified*, 748 F.2d 760 (2d Cir.1984)). Thus, a court may consider whether the Insureds are "sophisticated business[people]." *Moshiko*, 137 A.D.2d at 75, 529 N.Y.S.2d at 288. Finally,

> it is not the function of a court to rewrite insurance policies so as to provide coverage which the court might have considered more equitable.

*Cornellier v. American Casualty Co.*, 389 F.2d 641, 644 (2d Cir.1968).

This Court does not find the National Union Policy ambiguous. While one could conceivably demonstrate the Policy's potential to confuse a layman, this Court cannot accept the contention that persons such as movants, who are of sufficient sophistication to be in the market for this brand of insurance, would be misled by the language of the Policy. Nor, importantly, does the Court find any latent ambiguity by virtue of the Policy's silence about the timing of the payment of legal expenses. Flush with the *Okada* and *Pepsico* decisions, movants ignore the fact that prior to those, there was never any doubt that legal expenses, while a covered loss, were not paid contemporaneously.[6]

■ Most important, the National Union Policy contains a material "other provision[ ]," *Okada II*, 823 F.2d at 280, absent from both *Okada II* and *Pepsico*, which dispositively distinguishes the results in those cases.[7] Neither *Okada* nor *Pepsico* involved a policy containing a provision comparable to Endorsement No. 3 in the National Union Policy, which establishes a priority to the limited insurance proceeds that necessarily precludes contemporaneous payment of legal fees. Under New York law, the language of the endorsement is not ambiguous, but is easily and sensibly interpreted as precluding the contemporaneous payment of legal fees. Otherwise, the priority the endorsement gives to the claims of injured third parties could be defeated. Movants apparently seek to equate the need to interpret or apply the endorsement with ambiguity. To be sure, the endorsement is silent about the timing of the payment of legal expenses, but in this Court's view, there is only one reasonable interpretation of the provision, and thus only one reasonable answer to the contemporaneous fee payment question, and thus no ambiguity.[8] Movants also ar-

---

6. For the same reason the Court is unpersuaded by movants' argument that National Union's interpretation of the contract could not possibly be correct as a matter of common sense. Unless legal fees were reimbursed as billed, movants argue, it would be impossible to sell a director and officer liability policy since the insureds would not truly be protected from harm. As stated in the text, this argument is contrary to historical fact. In addition, the Court cannot help but be aware of the potential impact of its decision on the market for director and officer liability insurance. As with all liability insurance, judicial rewriting of policies for the benefit of insureds, by contributing to an upward pressure on rates, could reduce the overall availability of coverage.

7. For this reason, defendants' reliance on *Eureka Fed. Sav. & Loan Ass'n v. American Casualty Co.*, 873 F.2d 229 (9th Cir.1989) is misplaced.

*Eureka* merely confirmed *Okada II*, which this Court finds inapplicable here.

8. Movants rely, but to no avail, on *National Union Fire Ins. Co. v. FDIC*, No. 85 Civ. 6860 (C.D.Cal. Feb. 27, 1987) (Gadbois, J.), in which the Court construed a policy which contained language virtually identical to Endorsement No. 3 as requiring the contemporaneous payment of legal expense. In *FDIC*, the court based its conclusions on the following grounds: (i) it interpreted a policy provision which is similar to Paragraph B of Endorsement No. 3 as imposing a duty to defend; (ii) it relied on a provision of the California Civil Code which established that contracts of indemnity include a duty to defend, unless a contrary intention is stated; and (iii) relying on *Okada I*, it rejected the insurer's contention that it was only obligated to pay defense costs after the corporation involved

gue that "ambiguity," requiring construction against the insurer National Union, is created by what they characterize as an inconsistency between National Union's interpretation of Paragraph A of Endorsement No. 3 and paragraph 2(c) of the Policy, which defines loss as "costs, charges and expenses ... incurred in the defense of actions." Assuming (again) *arguendo* that movants' (like *Okada*'s) interpretation of paragraph 2(c)'s language is correct and that standing alone it might require contemporaneous payment of legal fees, the Court nonetheless does not find that Endorsement No. 3's *qualification* or *limitation* of the language in paragraph 2(c) creates ambiguity. Endorsement No. 3 tracks the covered loss language of paragraph 2(c), repeating paragraph 2(c)'s proviso that the insurer shall pay 95% of all "costs, charges and expenses," but then imposes a condition on such payment, stating that such payment is subject to the condition that those items are payable up to the limit of liability under the policy. Thus Endorsement No. 3 implicitly references and then *merely limits* paragraph 2(c); it does not contradict it, nor, therefore, does it create ambiguity.

Movants also argue that the endorsement itself is internally inconsistent, in that paragraph A and paragraph B appear to conflict. Paragraph B provides, in pertinent part, that the Insureds need not contest any legal proceedings unless mutually selected counsel so advise, and that

> [i]n the event of the Insureds being so required to contest legal proceedings, the Insurer ... will pay 95% of all costs, charges and expenses in connection therewith.

Movants argue that because this paragraph, which provides that the insurer "will pay 95% of all costs, charges and expenses" is silent on the issue of timing, and could be interpreted as authorizing contemporaneous payment, it is inconsist-

ent with the prior paragraph. While the provision would be tidier if it explicitly referenced the limitations of paragraph A of the endorsement, its failure to do so does not create an inconsistency or an ambiguity since this paragraph is part of the very same endorsement, and need not reference the prior language as it might a paragraph buried pages earlier in the body of the Policy.

In short, movants' arguments are merely attempts to identify imperfections in the Policy that simply do not rise to the level of ambiguity. Any doubts movants' attorneys may eloquently and artfully create are too speculative to trigger this Court's power to resolve doubts in the Insureds' favor.

### 3. New York's Insurance Regulations

█ It has been suggested that Endorsement No. 3 violates the requirements of N.Y. Department of Insurance Regulation 107, 11 N.Y.C.R.R. § 71, that as a result of such violation Endorsement No. 3 is void, and, by implication, that this Court should disregard the language of the Endorsement in interpreting the Policy. This argument is flawed, however, and must be rejected.

Regulation 107 was promulgated in October 1983 and took effect in November of that year. It limited the ability of insurers to offset legal defense expenses against the total liability limit of a policy; however, for commercial policies, including directors and officers policies, it allowed such offsetting, provided certain conditions were met. Among other things, Regulation 107 required that the offset provisions be stated in boldface type on the application and on the face of the policy, and that the insured sign a statement indicating awareness of the effects of the offset provisions. *See* 11 N.Y.C.R.R. § 71.4 (originally § 71.3).

Some years before Regulation 107 was promulgated, plaintiffs had submitted Endorsement No. 3 to the New York Insur-

---

in the case had a legal obligation to indemnify its directors. It is apparent that any arguments based on the California Civil Code have no application here, and no issue has been raised before this Court regarding the corporation's duty to indemnify. The court in *FDIC* ignored

the policy provisions which correspond to Paragraph A of Endorsement No. 3; for the reasons stated in text, this Court is of the opinion that Paragraphs A and B of Endorsement No. 3, when construed together, do not impose a duty to defend.

ance Department, and had received that Department's approval of the Endorsement. The specific offsetting provisions of Endorsement No. 3 do not appear to violate Regulation 107 in any way. It appears that the Policy did not comply with Regulation 107's notification provisions requiring boldface statement of the offset language and that the Insureds never signed the required notification form. It is incorrect to conclude, however, that such technical defects in a provision which otherwise comports with New York's public policy requires the voiding of the Endorsement. Rather, under New York law, the effect of a violation of insurance regulations is determined by carefully balancing the equities of the parties. *Farley v. Metropolitan Life Ins. Co.*, 127 A.D.2d 99, 104; 513 N.Y.S.2d 712, 715 (2d Dept.1987). Here, the only defect in the Policy involved a failure to give formal notice of, and to obtain insured's consent to, the offset provisions. On the other hand, defendants Chait et al. were fully aware of the provisions and their effect. The provision was found in a policy issued by plaintiffs to defendants Chait et al. several years prior to the issuance of the Policy; similar provisions were found in policies issued by a subsidiary of defendant Ambassador Group, which was under the control of defendants Chait et al. In addition, prior to the issuance of the Policy, defendants Chait et al. received a quote letter which summarized the basic terms of the Policy, and which itself contained a boldface statement indicating that the Policy's liability limits included defense costs. In light of the fact that the essential provisions of Endorsement No. 3 comport with New York public policy, and in view of the absence of prejudice to defendants Chait et al. as a result of plaintiff's failure to provide the required notification, this Court finds that Endorsement No. 3's technical

defects provide no basis for rewriting the essential terms of the Policy.[9]

**INTERPLEADER**

One final remark wraps up this motion. All parties have argued, although for different reasons, that the nature of the instant action (interpleader) should affect this Court's interpretation of the Policy. National Union argues that the prepayment of legal fees would erode the limited proceeds that constitute the stake to which there are many claimants, and thereby sabotage this interpleader action, the very essence of which is judicial apportionment of a limited fund to which there are numerous, conflicting claims. Movants on the other hand suggest that because interpleader might become a vehicle through which insurers could seek to avoid contractual obligations, the Court should assess the insurer's interpretation of the Policy with even greater scrutiny. In this Court's view, however, Congress has nowhere indicated that the interpleader statute was intended to alter state contract and insurance law. Thus interpleader considerations have not influenced today's decision.

**CONCLUSION**

In sum, this Court finds no ambiguity in the Policy, and concludes that a plain reading of the Policy, particularly the language of paragraph A of Endorsement No. 3, does not require the contemporaneous or interim reimbursement of the Insureds' legal fees. The motions for partial summary judgment are therefore denied.

SO ORDERED.

9. The Court is aware that the Superintendent of Insurance of the State of New York, in noting the potential violation of Regulation 107, has reserved his right to seek to require plaintiff not to charge legal fees against the Policy's stated coverage limits; however, the Superintendent has also taken the position that the violation of Regulation 107, if any, does not require that plaintiff pay defendants' legal expenses contemporaneously. Of course, nothing in this opinion is intended to preclude the Superintendent from taking any action it deems appropriate in connection with any violation of New York's insurance regulations.