OPINION OF THE COURT
Charles A. Kuffner, Jr., J.
This is an action, separate and apart from a certain matrimonial action entitled Brian Maloney v Rita Maloney (index No. 599/84), in which plaintiff Brian Maloney, M.D., P. C. seeks relief against Rita Maloney and the Seaview Anesthesia Group as follows:
1. Enjoining and restraining the defendant Seaview Anesthesia Group from issuing any further checks to the defendant Rita Maloney pursuant to the income execution levied on October 9, 1987;
2. Enjoining and restraining the defendant Rita Maloney
from attempting to further levy upon the plaintiff’s income by means of CPLR 5241;
3. Declaring that the arrears in maintenance and child support totaling $22,071.44 has been paid;
4. Declaring the calculated total sums of money paid on the entire judgment thus far;
5. For counsel fees, costs and disbursements of this action.
The form of this action is peculiar. The Legislature has provided a remedy for debtors served with income executions in CPLR 5241 (e). The court’s experience has been that the "application to the supreme court” referred to therein usually takes the form of an ordinary motion, notwithstanding that a special proceeding was authorized by subdivision (e).
Accordingly, the court sua sponte orders and directs that this proceeding be consolidated with the above-mentioned matrimonial action, and that this application will be treated as a motion pursuant to CPLR 5241 (e) within said action, *854 together with a request for other relief as set forth in the order to show cause. (CPLR 103 [c].)
A chronological review of the material events which have taken place leading up to this latest dispute might be helpful in understanding the problem at hand.
Brian Maloney and Rita Maloney were divorced by a judgment of this court entered July 8, 1988. The court awarded a money judgment in favor of Rita Maloney for $22,071.44 representing unpaid maintenance and child support arrears under a pendente lite order (Felig, J.). She was also awarded a judgment for $2,500 representing unpaid counsel fees awarded under the same order. She was further awarded a distributive share of the plaintiff husband’s medical license, payable over a 10-year period. For purposes of this proceeding, the payments at issue are the first for $28,000 due May 1, 1986, the second for $30,240 due May 1, 1987, and the third for $58,320 due May 1, 1988. The judgment has been affirmed (Maloney v Maloney, 137 AD2d 666 [2d Dept]).
After the amounts awarded in the judgment remained unpaid, Rita Maloney, through her attorney, caused an income execution (CPLR 5241) to be served upon the debtor, Brian Maloney, on September 16, 1987, and then upon his employer, Seaview Anesthesia Group, on or about October 6, 1987. Seaview withheld $1,163.46 per week from moneys owing to Brian Maloney and paid them to Rita Maloney, pursuant to the income execution. She was so paid from October 16,1987 to April 8,1988, for a total of $30,249.96.
The income execution at issue declared the amount of arrears at $78,111.44 as of September 9, 1987. Since the judgment of divorce makes no provision for maintenance or child support other than that represented by the $22,071.44 arrears judgment, it is clear that the income execution seeks to enforce, at least in part, that part of the judgment representing the distributive award of marital property, to wit: Brian Maloney’s medical license.
Thus, the issue for ultimate resolution, for which there appears no precedent in this State, is whether the income execution, pursuant to CPLR 5241, is a proper device to enforce payments which represent an equitable distribution of marital property.
Before reaching that precise issue, a threshold question must be resolved. Brian Maloney did not move to set aside the income execution within 15 days of its service. (CPLR 5241 *855 [e].) Did he effectively waive his rights to object to the propriety of the income execution as a result? The answer is that he did not.
At the time of the service of the execution, it is not disputed that the judgment of arrears for maintenance and support remained unsatisfied, and that Brian Maloney made no attempt to vacate it. It is only when his support obligation was satisfied did he question the continued withholding of sums due to him. His failure to move within 15 days should not stop him from claiming that an order of support (CPLR 5241 [a] [8]) does not exist. If a support order does not exist, it does not exist and an estoppel should not be invoked to create it (see, Chrapa v Johncox, 60 AD2d 55, appeal dismissed 44 NY2d 836; Schiff Assocs. v Flack, 51 NY2d 692; Nassau Ins. Co. v Manzione, 112 AD2d 408, lv denied 66 NY2d 605).
The 15-day time frame within which to move is not in the nature of a Statute of Limitations (CPLR 201); it is more akin to an act which must be done within a prescribed time. Such time limitations may be extended by the court for good cause shown (CPLR 2004), and the court in its discretion so extends plaintiff’s time as is necessary to deem this application timely.
That threshold question aside, the court will now discuss the issue for ultimate resolution.
The plaintiff husband contends that CPLR 5241 is a wage attachment method of enforcing monetary judgments only for child or spousal support and not for equitable distribution. More specifically, the plaintiff contends that CPLR 5241 allows an income execution where a default has occurred under an order of support. The term "order of support” is specifically defined as "any temporary or final order, judgment or decree in a matrimonial action or family court proceeding, or any foreign support order, judgment or decree, registered pursuant to section thirty-seven-a of the domestic relations law which directs the payment of alimony, maintenance, support or child support.” (CPLR 5241 [a] [1]; emphasis added.) The plaintiff further contends that equitable distribution, and any award thereof, is clearly not a form of support within the confines of the term "order of support”.
The defendant wife contends that a divorce judgment containing a distributive award falls within the letter and spirit of CPLR 5241; a plain, clear language and meaning of the statutory definition of an order of support dictate such reasoning. In support of her proposition, she cites to a law review *856 article by Joel Brandes, Esq. (37 Syracuse L Rev 505, 513) in which he argues: "[That] while CPLR 5241 does not specifically allow the income execution to be utilized to collect arrears of other financial awards, such as a distributive award or counsel fees, it may be inferred from the definition that such use is authorized because the statute permits the income execution to be used to enforce an order or judgment which comes within the definition of an 'order of support’ ”.
The author is a well-respected matrimonial practitioner; however, his article does not comprise the definitive answer to the problem at hand. He provides no authority to support his inferences. His concludes, without basis, that those portions of a judgment directing the payment of support should be lumped together with those portions adjudging the parties’ rights in and to marital property, for purposes of defining an "order of support”. In fact, these decrees for equitable distribution and support are separate in legal theory, but are contained in one judgment, i.e., one "paper” because the Uniform Rules for Trial Courts seem to require it that way. (22 NYCRR 202.50; 22 NYCRR subtit D, ch III, subch B.)
Further, his conclusions are the opposite of those reached in the Practice Commentary to Domestic Relations Law § 244 by Alan D. Scheinkman (McKinney’s Cons Laws of NY, Book 14, at 749-750) who states, rather succinctly: "CPLR 5241 and 5242 are available only to collect support. Thus, those remedies are not available to enforce such non-support obligations as property distributions and awards of counsel fees. In order to reach a debtor’s income to enforce non-support arrears due under a matrimonial judgment, it would be necessary to obtain a judgment under DRL 244 and then proceed by ordinary income execution under CPLR 5231, which is applicable to the enforcement of civil money judgments generally and which also limits the amount that may be obtained to 10% of the debtor’s income.”
Thus, it appears that the Legislature has provided remedies for persons in Mrs. Maloney’s position. The fact that these remedies are not as swift, expeditious, or immediate is unfortunate, but it is an anomaly which cannot be corrected by this court, for to do so would amount to judicial legislation (McKinney’s Cons Laws of NY, Book 1, Statutes § 73).
On first blush, it would seem that Domestic Relations Law § 236 (B) (9) (a) would authorize the use of an income execution as an enforcement device to recover her share of the *857 marital property. It reads, in pertinent part: "All orders or judgments entered in matrimonial actions shall be enforceable pursuant to section fifty-two hundred forty-one or fifty-two hundred forty-two of the civil practice law and rules, or in any other manner provided by law.” (Emphasis added.)
The phrase "enforceable pursuant to section [5241] or [5242] of the civil practice law and rules, or in any other manner” was inserted into this statute by Laws of 1985 (ch 809, eff Nov. 1, 1985) at the same time as the enactment of CPLR 5241 and 5242 as part of the New York State Support Enforcement Act of 1985. Because they were enacted together, it is fair to construe them in pari materia, i.e., as a whole (McKinney’s Cons Laws of NY, Book 1, Statutes § 97). "Statutory language, however strong, must yield to what appears to be intention and that is to be found not in the words of a particular section alone but by comparing it with other parts or provisions of the general scheme of which it is part.” (Id., at 213.)
Thus, construing Domestic Relations Law § 236 (B) (9) (a) in a vacuum distracts the reader from the true intent of the Act. This statute was enacted as part of a series of procedural measures to aid in the implementation of family support obligations, which were enacted in Laws of 1985 (ch 809). They are known collectively as the New York State Support Enforcement Act of 1985. In Governor Mario Cuomo’s approval of the bill dated August 2, 1985, he stated that the "bill * * * will enact dramatic and comprehensive reforms of the child and spousal support enforcement system.” (1985 McKinney’s Session Laws of NY, at 3324; emphasis by the court.) The legislative data indicated that the Act will bring New York into compliance with recently enacted Federal child support requirements (see, 42 USC § 651 et seq.) and bring comprehensive reform of child support enforcement in New York State (see, Governor’s mem on approving L 1985, ch 809, 1985 McKinney’s Session Laws of NY, at 3324). It is clear that equitable distribution awards were not within the Legislature’s contemplation when the Act was considered. The mischief intended for legislative remedy was, according to the Governor’s memorandum, overdue support obligations, and the remedy chosen was, inter alia, expedited judicial resolution of these matters. This act should be construed in a manner which suppresses the evil and advances the remedy (McKinney’s Cons Laws of NY, Book 1, Statutes § 95).
In view of these considerations, the true construction of Domestic Relations Law § 236 (B) (9) (a) must be that all *858 orders and judgments in matrimonial actions are enforceable by CPLR 5241 and 5242 to the extent that these statutes are, by their terms, applicable to such orders or judgments. This is the only construction consistent with the Support Enforcement Act.
Here, the Legislature had the opportunity to include distributive awards in its definition of an "order of support” with a simple stroke of the pen, but it did not do so. The fair and reasonable implication is that the Legislature specifically intended the exclusion (McKinney’s Cons Laws of NY, Book 1, Statutes § 74), and the court should not amend the statute by inserting words intentionally omitted (Oneida Natl. Bank & Trust Co. v Manikas, 10 Misc 2d 671; see also, Clark v Utica Gas & Elec. Co., 224 App Div 448, 449).
It must be emphasized that the payments required over a 10-year period represent Mrs. Maloney’s equitable share in plaintiff’s medical license, and not spousal support. The equitable distribution statute created this new class of property, heretofore unknown to the common law, when it classified all property as "marital” or "separate”. The fact that the license is not property in the traditional sense, as something with a market value, is irrelevant. It is nonetheless property as opposed to the concept of maintenance, which attempts to permit the recipient an opportunity for financial independence. All of the foregoing has been well settled by the Court of Appeals in OBrien v O’Brien (66 NY2d 576). Following the lead of O’Brien the Second Department has recently held that it is error for the court to treat the wife’s award of a portion of her husband’s pension, i.e., marital property, as an additional source of maintenance rather than as a property division (Buzzeo v Buzzeo, 141 AD2d 490).
If one takes the O’Brien analysis to its logical conclusion, the only consistent result is that Rita Maloney must be relegated to other remedies applicable to enforcement of money judgments, e.g., restraining notices (CPLR 5222), receiverships (CPLR 5228), income executions (CPLR 5231); levy and sale of personal property (CPLR 5232, 5233), and levy and sale of real property (CPLR 5235, 5236).
To date, there has been no authority directly on point from the courts of this State. Recently, the Superior Court of Pennsylvania specifically found that "[ejquitable distribution is not a form of support. Support, child or spousal, assures a reasonable living allowance to the party requiring support *859 * * * The essence of the concept of equitable distribution, on the other hand, is not one of sustenance, but rather, is the division by the trial court of the parties’ marital property ‘in such proportions as the court deems just.’ ” (Laughlin v Laughlin, 372 Pa Super 24, —, 538 A2d 927, 929.)
In Laughlin (supra), the trial court allowed an attachment of the husband’s wages to enforce a court order solely for the payment of equitable distribution. A State statute entitled “Personal earnings exempt from process” (42 Pa Cons Stat Annot § 8127) exempted all wages and salaries from attachments, executions or other process, except for support proceedings. Thus, the Superior Court held that the attachment of the husband’s wages was in error inasmuch as the equitable distribution payments were not support and thus fell within the exemption stated in the statute.
Like CPLR 5241, the Pennsylvania statute creates two classes for wage assignments: those concerning family support, and all others.
Support obligations get special treatment in both States but equitable distribution awards simply do not fall under this category. The only thing they have in common is that they can take the form of a monetary obligation by one party to a former spouse. Otherwise, they have different purposes, different legal theories, different standards for ascertaining the obligation due, different tax consequences, and a different social genesis.
This court finds the reasoning of the Laughlin decision (supra), though technically not binding on this court, persuasive and consistent with the legislative intent of Domestic Relations Law § 236 (B) and CPLR 5241, and I will follow its lead.
Accordingly, the court directs:
1) That the income execution heretofore served on Seaview Anesthesia Group, on or about October 6,1987, is vacated.
2) That Seaview Anesthesia Group is permanently enjoined from further honoring said income execution and from paying over any further amounts to Rita Maloney pursuant to it, all without prejudice to the future service of an income execution pursuant to CPLR 5231.
3) That Rita Maloney, her agents or attorneys, shall be permanently restrained and enjoined from attempting to enforce the equitable distribution award of plaintiff’s license by *860 means of an income execution (CPLR 5241) or income deduction order (CPLR 5242).
At this juncture, the court deems it appropriate to call upon the Legislature to clarify the Domestic Relations Law and the CPLR, by appropriate amendment, if it is the intention of that body to make distributive awards enforceable by the CPLR 5241 income execution. The present statutes, together with legislative documents and ordinary statutory construction, lead to the opposite conclusion.
Remaining for resolution is the problem of the money heretofore paid by Seaview Anesthesia Group to Rita Maloney. Pursuant to the judgment, $22,071.44 was owing to her as maintenance and child support, and an additional $2,500 in counsel fees. Because the income execution is improper to enforce any further awards under the judgment, for the reasons discussed herein, $5,678.52 has been overpaid. No purpose would be served in directing Rita Maloney to return this sum to Dr. Maloney. Consequently, the court deems it proper to credit this sum towards the first payment of the distribution award now due and owing. He has documented, to the satisfaction of the court, the payment of $7,516.21* in additional moneys to his former wife through April 29, 1988. Thus plaintiff presently owes $14,805.27 on the first payment due, $30,240 on the second payment due, and $58,320 on the third payment, and he is entitled to be credited accordingly.
Finally, the court makes no determination as to the propriety of a certain restraining notice to garnishee served on Janice Gulley, M.D., an alleged debtor of Brian Maloney, M.D.
The motions and cross motions are granted only to the extent indicated herein.

 $5,647.01 was garnished from certain Veteran’s Administration benefits between February 28, 1987 and July 18, 1987; $1,600 admittedly received by respondent; and an additional money order for $269.20.