Moshiko, Inc., et al., Respondents-Appellants, v Seiger & Smith, Inc., et al., Respondents, and Insurance Company of the State of Pennsylvania, Appellant-Respondent.

First Department, May 19, 1988

### APPEARANCES OF COUNSEL

*Michael J. Carcich* of counsel *(Kenneth P. Fremont, Alvin P. Bluthman* and *Alan J. Brill* with him on the brief; *Kroll & Tract,* attorneys), for respondents-appellants.

*Arthur N. Brook* of counsel *(Jeffrey S. Weinstein* with him on the brief; *Mount, Cotton & Wollan,* attorneys), for appellant-respondent.

### OPINION OF THE COURT

SULLIVAN, J.

The Insurance Company of the State of Pennsylvania (Pennsylvania) appeals from an order which, *inter alia,* granted summary judgment to Varda, Inc., its insured, as to liability only, and dismissed the action against Varda's broker, Seiger & Smith, Inc. and its president, Steven A. Vasaka. The court's ruling, based on a finding of ambiguity, effectively rewrote Pennsylvania's policy to afford first-party coverage under an endorsement which is expressly described in the policy as affording legal liability coverage only. Moreover, the policy contained the precise coverages requested of it by the broker. Accordingly, we reverse the award of summary judgment to Varda, grant Pennsylvania's motion for summary judgment dismissing the complaint, and reinstate the complaint against Seiger & Smith and Vasaka.

Varda operated a retail shoe store on the street floor level of premises known as 714 Lexington Avenue in New York City, owned by defendant Leaselex Realty Corp., which, under a net lease, rented the entire building to Moshiko, Inc. Moshiko in turn rented store space to Varda, which alleges that on or about July 5 and 6, 1981 its stock was damaged when water escaped from a broken building pipe.

Varda filed a claim under its special multiperil policy with Pennsylvania, which denied coverage because the policy's personal property coverage was limited to specified perils only,

and water damage was not one of the specified risks. After Pennsylvania's disclaimer, Varda and Moshiko, each of which were controlled by the same principal, commenced this action against Seiger & Smith and Vasaka for having failed to obtain, as requested, first-party coverage for water damage to contents. A year and one-half later, Varda and Moshiko joined Pennsylvania as a defendant. Additionally, they sought to reform the policy to name Moshiko as an additional insured even though Pennsylvania had never been requested to insure Moshiko.

On this record, it is clear that Pennsylvania issued its policy in conformity with the exact terms and conditions appearing on the order/binder form submitted to it by Seiger & Smith and Vasaka, who just as clearly, were Varda's, not Pennsylvania's agents. As Vasaka testified, Seiger & Smith did not have an agency relationship with Pennsylvania. Before he could issue a temporary binder to Varda, he had to call Pennsylvania's local managing agent for specific authority. Specifically, as ordered by Vasaka, the policy provided all risk coverage on the building with a limit of $300,000, specified perils coverage as to personal property with a limit of $250,000, bodily injury and property damage liability coverage with a limit of $1,000,000, real property fire liability coverage with a limit of $100,000, and water damage legal liability coverage with a limit of $100,000, as well as various miscellaneous coverages. Coverage for damage to personal property is provided in an endorsement known as the General Personal Property Form, section IV of which specifies the perils covered. Water damage is not one of those listed. Moreover, section V of that endorsement designated "Exclusions", lists a number of risks that are exempted from coverage, among which are water damage losses resulting from an assortment of events.

Recognizing that the General Personal Property Form did not cover its water damage loss, Varda argued to the motion court that coverage was afforded under a policy provision encaptioned "WATER DAMAGE LEGAL LIABILITY ENDORSEMENT", which provides coverage for water damage legal liability to the extent of $100,000 per occurrence and is referred to on the coverage page of the policy, under additional liability coverages, as "Water Damage Legal". Despite the fact that its broker specifically ordered "water damage legal liability $100,000", both orally and on the order/binder sent to Pennsylvania, Varda managed to persuade the court that the water damage legal liability coverage Pennsylvania provided was, in

fact, not liability coverage at all, but first-party personal property coverage for water damage.

The complaint asserts three causes of action against Pennsylvania, the theories of two of which are not entirely clear.* For instance, in the first cause of action, purportedly on the policy, plaintiffs never allege that Varda's water damage loss is a covered loss. Instead, they allege what they believed the coverage under the policy should have been, thereby revealing that their plaint is really with their own agents, Seiger & Smith and Vasaka. Notwithstanding their failure to assert that the claim is even covered, plaintiffs allege that "[n]o part of [our] claim has been paid by defendant, Pennsylvania, although duly demanded." The second cause of action merely realleges the factually deficient first cause of action and concludes that "[b]y reason of the acts of its agents, defendant, Pennsylvania, is liable to plaintiffs in the sum of $100,000."

Without ever addressing the insufficiency of the pleading as against Pennsylvania, the court denied Pennsylvania's motion for summary judgment with the necessary implication that the pleading stated causes of action, and granted Varda's motion for summary judgment against Pennsylvania on the first cause of action on liability only. Although the court found ambiguity in the water damage legal liability endorsement, it never pointed to the precise terms which it found ambiguous. Thus, the court construed the endorsement as providing first-party water damage property coverage and dismissed the action against Seiger & Smith and Vasaka.

The policy contains the customary language universally used in liability insurance, namely, "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay". While the water damage legal liability endorsement does not so provide, the caption "WATER DAMAGE LEGAL LIABILITY ENDORSEMENT" appears in underlined capital letters at the top thereof. The endorsement is worded so as to provide coverage only "if such cause occurs on or from premises owned by or rented to the named insured". This concern with the origin of the occurrence is similar to the language found in the general liability portions of the policy. When read together, it is clear that the water damage legal

---

* A third cause of action seeks reformation of Pennsylvania's policy to name Moshiko as a named insured. The motion court properly refused to reform the policy in this regard and denied plaintiffs' motion for summary judgment on that cause of action as well as on the second cause of action.

liability endorsement provides coverage only for damage for which the insured may be found legally liable to others. Indeed, even plaintiffs' own expert conceded that the endorsement, in the context of the entire policy, provided only third-party liability coverage. His argument is that, "to a layman, the wording of the endorsement could be easily interpreted to infer first-party water damage coverage."

In contrast to the legal liability provisions of the policy, the first-party property coverage provisions clearly restrict coverage to certain specified perils. The General Personal Property Form provides insurance "against all direct loss to the property covered under this form caused by" and then enumerates the risks, which include fire, lightning, windstorm or hail, explosion, smoke, damage from aircraft or vehicles other than those owned or operated by the insured or any tenant of the designated premises, riot, and vandalism or malicious mischief. Water damage is not included. Furthermore, as already noted, under its exclusions section the form specifies different types of water loss which are not covered.

Not only is the policy clear on its face, but Varda's agents, Seiger & Smith and Vasaka, knew precisely what kind of coverage the policy provided, and that it did not afford first-party water damage coverage for contents. The decision on the insurance package ultimately obtained was the product of intense negotiations between Varda and the two brokers who were competing for its business. The competitor's proposal for personal property coverage was also on a specified perils basis and did not include water damage. Eventually, Seiger & Smith, which had to match its competitor's quote of $4,165 for the entire package, prevailed and placed the coverage with Pennsylvania.

In his deposition Vasaka testified that he advised Varda that the best possible coverage would be a package of all-risk on the contents as well as on the building, but Varda rejected such proposal because it refused to incur the additional premium for water damage coverage and the cost of installing a security system for burglary coverage. According to Vasaka, the "primary consideration was cost". On the other hand, Ezra Omri, Varda's president, testified that Vasaka told him that "[you] will be covered for everything, including especially water damage, which we had experienced before."

According to Vasaka, the water damage legal liability endorsement was eventually purchased because of his belief that

if a loss similar to the one Varda had previously experienced were to occur due to the negligence of an outside source, such as another tenant or the landlord, Varda would be covered up to $100,000. As he expressed it, "They could pick up for an inexpensive cost structure included in my proposal liability coverage against somebody else's negligence. We included that." At another point, speaking of the water damage legal liability endorsement, he testified, "Yes, if Leaselex was negligent [Varda] would have been entitled to water damage caused to [its] contents." It should be noted that, at Vasaka's request, Leaselex was named as an additional insured under the Pennsylvania policy. As he testified, Vasaka was unaware at the time of Moshiko and of its role as net lessee of the building. Varda's present attempts to have the policy reformed to name Moshiko as a named insured take on a new light in view of this testimony. Whether the water damage legal liability endorsement would cover Moshiko, had it been named as an additional insured, for its liability in causing a water damage loss to Varda, the insured, is, of course, an issue we need not reach.

In any event, where the provisions of an insurance policy are clear, the contract must be enforced as written. *(Cf., State of New York v Home Indem. Co.,* 66 NY2d 669.) A court may neither make nor vary an insurance contract by extending coverage beyond the fair intent and meaning of the agreement, and the liability of the insurer cannot be enlarged by implication beyond the express terms of the contract. *(See, Jackson v Employers' Liab. Assur. Corp.,* 139 Misc 686, 688-689, *affd* 234 App Div 893, *affd* 259 NY 559; *Astrin v East N. Y. Woodwork Mfg. Co.,* 210 App Div 720; 11 Couch, Insurance 2d § 44:7; 13 Appleman, Insurance Law and Practice § 7466.)

Concededly, where a question arises as to the meaning of a particular provision, or the provision is susceptible to more than one reasonable interpretation, all ambiguities must be resolved in favor of the insured. *(Breed v Insurance Co.,* 46 NY2d 351, 353; *Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co.,* 34 NY2d 356, 361; *Murray Oil Prods. v Royal Exch. Assur. Co.,* 21 NY2d 440, 445; *Greaves v Public Serv. Mut. Ins. Co.,* 5 NY2d 120, 125.) The rationale is that if the policy language is unclear and can reasonably be interpreted in a way that affords as well as excludes coverage, the ambiguity should be resolved against the insurer, the draftsman of the language. A court may not, however, find ambiguity in an insurance policy

provision where none exists. *(Sutro Bros. & Co. v Indemnity Ins. Co.,* 264 F Supp 273, *affd* 386 F2d 798; *Loblaw, Inc. v Employers' Liab. Assur. Corp.,* 85 AD2d 880, *affd* 57 NY2d 872; *Acorn Ponds v Hartford Ins. Co.,* 105 AD2d 723; *see also,* 11 Couch, Insurance 2d § 44:7.) As Justice Steuer of this court noted in his dissent in *Perth Amboy Drydock Co. v New Jersey Mfrs. Ins. Co.* (26 AD2d 517, 518), "Ambiguity appears to be a disease to which insurance policies are peculiarly susceptible and no immunity from attack can be provided by the clearest language or the most unmistakable terms, if the result is not what the policyholder may have envisaged * * * The fact that plaintiff may have contracted for coverage that was of little use to it at the time [of the loss] does not mean that it is entitled to more beneficial coverage which it did not contract for."

Those comments are of particular relevance here, where, despite the clear designation of the water damage endorsement as liability coverage, the motion court below rewrote the Pennsylvania policy to provide first-party water damage coverage for the contents of Varda's store. As for the argument that a layman might infer first-party coverage, it is well established that "[t]he plain meaning of the policy language is not measured * * * by the understanding of a lay person, but by the understanding of a person engaged in the insured's course of business." *(American Home Prods. Corp. v Liberty Mut. Ins. Co.,* 565 F Supp 1485, 1495, *mod* 748 F2d 760; *see also, McGrail v Equitable Life Assur. Socy.,* 292 NY 419, 424-425.) In this connection, it should be noted that Varda's principals are sophisticated businessmen who run a successful retail shoe operation on Manhattan's upper East Side. Moreover, the question of the existence of an ambiguity or the degree thereof does not turn on the subjective understanding of one of the parties.

In any event, there is not one shred of evidence to indicate that Pennsylvania issued anything other than the coverage specifically ordered on Varda's behalf by its broker, Seiger & Smith and Vasaka. This lawsuit started as a dispute between Varda and its broker, who are the only parties to any purported misunderstanding. Pennsylvania delivered the policy containing only the coverages that the broker asked it to issue. That policy did not contain personal property coverage for water damage. The courts cannot rewrite the policy.

The dispute regarding the insurance coverage that Varda now claims it wanted and what it actually received does not

involve Pennsylvania, which is entitled to summary judgment dismissing the complaint. The complaint should be reinstated against Seiger & Smith and Vasaka.

Accordingly, the order of the Supreme Court, New York County (Alvin F. Klein, J.), entered February 5, 1987, which, *inter alia,* granted plaintiffs' cross motion to the extent of awarding Varda, Inc. summary judgment on the first cause of action as to liability only, should be modified, on the law, to deny said cross motion in its entirety, to grant defendant Pennsylvania's motion for summary judgment dismissing the complaint, to reinstate the complaint against defendants Seiger & Smith, Inc. and Steven A. Vasaka and, except as thus modified, affirmed, without costs or disbursements.

KUPFERMAN, J. P. (dissenting in part). The order, which granted summary judgment to the plaintiff Varda, Inc., as to liability only, denied the defendant Insurance Company of the State of Pennsylvania's motion for summary judgment and dismissed the plaintiffs' action against the defendants Seiger & Smith, Inc. and Steven A. Vasaka, should be modified to deny summary judgment to the plaintiff Varda and to reinstate plaintiffs' action against defendants Seiger & Smith, Inc. and Steven A. Vasaka.

The premises are owned by Leaselex Realty Corp. and leased to Moshiko, which, in turn, sublet the first floor and basement to Varda. Varda and Moshiko are closely held corporations owned by two brothers. Vasaka is the president of Seiger & Smith, Varda's broker.

Water pipes broke, causing damage to Varda's inventory. Varda had a retail shoe store on the street floor, with its stock stored below.

The issue which divides us is the coverage of the insurance policy, it being contended by the insurance company that the water damage provision covered only third-party claims.

It is hornbook law that an ambiguity in an insurance policy is interpreted against a company which authors the policy. *(Atlantic Cement Co. v Fidelity & Cas. Co.,* 91 AD2d 412, 418 [Alexander, J.], *affd* 63 NY2d 798.)

The applicable language of the insurance policy is entitled "Water Damage Legal Liability Endorsement". However, on the coverage page of the policy, under additional liability aspects, we have the language "Water Damage Legal".

It is obvious that the damage to third parties, if any, would

be insignificant. Therefore, if water damage was to be covered, as the plaintiffs contend, such coverage should have covered the contents. Accordingly, we agree the action against the broker should not have been dismissed. On the other hand, if the facts show that the policy was meant to cover this claim, then the insurance company would be liable.

Without a trial of the issue, it cannot be determined who is responsible or whether there is any coverage. The majority states that the policy is clear on its face, but the language and the circumstances considered together do present an ambiguity.

Ross and Asch, JJ., concur with Sullivan, J.; Kupferman, J. P., and Milonas, J., dissent in part in an opinion by Kupferman, J. P.

Order, Supreme Court, New York County, entered on or about February 5, 1987, modified, on the law, to grant defendant Pennsylvania's motion for summary judgment dismissing the complaint as to it, to deny plaintiffs' cross motion for summary judgment, and to reinstate the complaint against defendants Seiger & Smith, Inc. and Steven A. Vasaka and, except as thus modified, affirmed, without costs and without disbursements.