### M.Z. DISCOUNT CLOTHING CORP., Plaintiff,

v.

### Dr. Rita MEYNINGER, Director of Federal Emergency Management Agency, an agency of the United States Government, and Those Certain Underwriters at Lloyd's Issuing Policy Number L947020, Defendants.

No. CV 96–4828(RJD).

United States District Court,
E.D. New York.

Nov. 12, 1997.

Frank Winston, Wilkofsky, Friedman, Karel & Cummins, New York, NY, for M.Z. Discount Clothing Corp.

Zachary Carter, U.S. Attorney, Eastern District of New York by Leslie Brodsky, Asst. U.S. Attorney, Brooklyn, NY, for FEMA.

N. Jeffrey Brown, Caesar & Napoli, New York, NY, for Lloyds.

## MEMORANDUM & ORDER

DEARIE, District Judge.

This is an action to recover proceeds of two insurance policies. Plaintiff M.Z. Discount Clothing Corp. ("M.Z.") was insured under a $15,000 Commercial Crime Insurance Policy (the "FEMA Policy") issued by the Federal Emergency Management Agency ("FEMA").[1] M.Z. was also covered by an

---

**1.** The named federal defendant in this action is "Rita Meyninger, Director of Federal Emergency Management Agency, an agency of the United States Government." FEMA's Director is James Lee Witt, and the government asserts that Rita Meyninger has never been FEMA's director. De-

$85,000 excess policy issued by certain underwriters at Lloyds' ("Lloyds"). Less than one month after coverage under the Lloyds policy commenced, M.Z. claimed that certain of its inventory was stolen in a burglary. M.Z. claimed a loss in excess of $100,000, thus implicating both of these policies. FEMA and the Underwriters have moved to dismiss or, in the alternative, for summary judgment.

### DISCUSSION

Because the Court has relied on materials beyond the pleadings, it will treat the instant motions as motions for summary judgment. Summary judgment should be granted where there is "no genuine issue as to any material fact." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To survive a motion for summary judgment, the adverse party must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV P. 56(e).

### 1. *FEMA Motion*

The FEMA Policy was issued by the Federal Crime Insurance Program (the "FCIP"), which Congress created to provide crime insurance coverage to individuals and small businesses in areas where such coverage is difficult or impossible to obtain. *See* 12 U.S.C. §§ 1749bbb–10a *et seq.*; 44 C.F.R. § 80.2(a). FEMA is charged with administration of the FCIP, 12 U.S.C. §§ 1749bbb–2(a)(17), 1749bbb–10b, which is subject to the regulations set forth at 44 C.F.R. Part 80 *et seq.*

The FEMA Policy, the regulations enabling the government's issuance of such policies and applicable law required plaintiff to commence an action to recover proceeds within two years of its discovery of the loss and within one year of its receipt of notice of the disallowance of its claim. 12 U.S.C. § 1749bbb–11(b)(2); 44 C.F.R. § 83.26, at Condition 9 (setting forth required content for Commercial Crime Insurance Policies). The alleged burglary occurred on January 20, 1995. Submission of a sworn proof of loss within sixty days of the incident was a condition of coverage under the FEMA Policy. On March 17, 1995, plaintiff submitted a sworn proof of loss, by certified mail, to the FCIP's independent adjuster, M.J. Palais & Co., Inc. ("Palais"). Nevertheless, on April 1, 1995, the FCIP mistakenly notified plaintiff that the sixty-day period for submitting a valid proof of loss had expired, and that the claim would therefore be denied.

Plaintiff reacted immediately. On April 7, 1995, M.Z.'s accountant faxed a copy of its sworn proof of loss to the FCIP, explaining that plaintiff had submitted the sworn proof of loss to Palais within the sixty-day period. FEMA does not now contest that the original proof of loss was timely submitted, or that it denied M.Z.'s claim in error. In fact, the FCIP's April 1, 1995 letter stated that plaintiffs claim might be reconsidered if appropriate documentation was received within thirty days. Plaintiff understood that the April 7, 1995 letter from its accountant constituted such documentation.

By letter dated June 22, 1995, FEMA's adjuster requested certain additional documentation from M.Z. by August 14, 1995. Palais admonished plaintiff that: "[s]hould you fail to provide information requested by the extablished [sic] deadline, your clients [sic] claim may be closed without payment." In a report dated October 16, 1996, Palais informed the FCIP that Lloyds had denied M.Z.'s claim on August 1, 1996, "citing policy violations including late notice and false testimony" regarding the amount of the loss. Palais also informed the FCIP it had closed its file on the claim.

M.Z. commenced this action on October 2, 1996, within two years of the claimed loss and within one year after Palais' August 1, 1996 letter informing the FCIP it had closed its file. FEMA argues that the one-year limitations period began to run as of the FCIP's April 1, 1995 denial letter, and that the action is therefore time-barred. Plaintiff, citing *Farmacia San–Jose v. Federal Emer-*

spite the caption of this action, the government treats Mr. Witt *and* FEMA as parties defendant. References to FEMA herein are intended to refer to the actual federal defendant or defendants in this action.

*gency Management Agency,* No. CV–83–2054 (D.P.R. Apr. 26, 1984), argues that the April 1, 1995 letter was not a clear and unequivocal denial of its claim, and therefore did not trigger the one-year limitations period. Furthermore, plaintiff argues that the FCIP's April 1, 1995 letter left open the possibility of reconsideration upon submission of appropriate documentation, that such documentation was promptly submitted, and that Palais' June 22, 1995 letter indicated the claim was still under consideration.

### Discussion

In *Farmacia San–Jose,* the FCIP had denied an insured's claim, but invited the insured to request additional information or further clarification. The insured submitted several requests for reconsideration, each of which was denied. The district court ruled that the limitations period ran from the initial denial, and was not tolled by the requests for reconsideration. Contrary to plaintiffs contention, *Farmacia San–Jose* does not indicate that a denial letter must be "unequivocally clear and definite" to be effective. Rather, the court merely stated that even if it were to accept such a requirement, the requirement was satisfied by the denial letter at issue there.

However, although the limitations period for acting on FCIP policies has strictly been construed, *see Robinson v. Federal Ins. Admin.,* 1984 WL 425, at *2 (S.D.N.Y.1984) (Haight, J.) (interim period of negotiation, after initial denial, does not toll limitations period), none of the cases cited by FEMA indicates that a concededly erroneous denial triggers the one-year limitations period, particularly when the FCIP resumes consideration of the claim after being notified of its error. In fact, some courts that have denied similar claims on statute of limitations grounds have considered the possibility that the FCIP's reconsideration or reopening of a claim, after an initial denial, might toll the limitations period or preclude the initial denial from triggering the period. *See Massey v. Bragg,* 1985–86 Fire & Casualty Cas. (CCH)

792, 793 (E.D.N.Y. June 18, 1985) (Wexler, J.) (even though initial denial might not trigger limitations period, and action was commenced within one year of second denial, it was not commenced within two years of loss); *Rogers v. Federal Crime Ins. Co.,* 1985 WL 4892 (N.D.Ill.Dec.12, 1985) (even if first letter did not trigger limitations period, action was untimely because not filed within one year after second letter explaining denial); *Friends First Jewelry Corp. v. Giuffrida,* 587 F.Supp. 1018, 1020 (S.D.N.Y.1984) (Kram, J.) (even if original denial letter did not trigger limitations period because not received by plaintiff, action was untimely because not commenced within two years of loss).

In fact, at least one court has indicated, in a case where the FCIP denied a claim for failure to file a timely proof of loss, that if the insured had "submitted a sworn affidavit . . . stating that the documentation was timely sent, a material issue of fact precluding summary judgment might have been raised." *Denn v. Giuffrida,* 1985 WL 3057 (S.D.N.Y. Oct.9, 1985) (Haight, J.). This Court is presented with the case contemplated by Judge Haight in *Denn:* despite the denial of M.Z.'s claim on grounds no proof of loss was timely submitted, it is uncontested that the proof of loss was in fact timely sent. Therefore, because M.Z. complied with this policy requirement, the FCIP's April 1, 1995 denial letter did not trigger the one-year limitations period.[2]

Furthermore, the failure formally to retract the initial denial cannot inure to the government's benefit. That is, the government cannot deny a claim on erroneous grounds and then limit the insured's period to commence an action simply by refusing formally to acknowledge the error. The failure to make such an acknowledgment, particularly in light of the fact that FEMA's adjuster resumed consideration of the claim, cannot limit M.Z.'s right of action to the one-year period following the erroneous denial.

The Court holds that the FCIP's letter of April 1, 1995 did not trigger the one-year

---

2. The Court notes, additionally, that the April 1, 1995 denial letter did not notify M.Z. that it purported to trigger this limitations period. Nor did it inform M.Z. that the requests for additional information which would follow would purportedly not affect the fact that the claim was denied or the running of the limitations period.

limitations period. The action was timely commenced, and FEMA's motion for summary judgment is denied.

## 2. *Lloyds' Motion*

In a separate but related motion, Lloyds has moved for summary judgment on the ground that M.Z. failed to provide immediate written notice of loss, as required by the Lloyds policy, to Lloyds' named agent, Insurance Innovators Agency of New England, Inc. ("Insurance Innovators"). Specifically, the policy requires M.Z. "immediately [to] report to [Insurance Innovators] any occurrence likely to result in a claim," and states that "[f]ailure by the insured ... to report the said loss or damage ... shall invalidate any claim under this insurance." Plaintiff did not report the loss to Insurance Innovators until February 9, 1995, twenty days after the alleged burglary. By that time, Lloyds alleges, plaintiff had repaired the skylight and window through which the burglars allegedly had entered, prejudicing Lloyds' ability to investigate the claim.[3]

Plaintiff, however, claims it notified Lloyds of its claim, through a putative agent, five days after the alleged burglary. Plaintiff initially acquired the Lloyds policy through its insurance broker, Gheith Insurance Agency, Inc. ("Gheith"). On M.Z.'s behalf, Gheith contacted Morstan/LMG/Brisco Group, Inc. ("Morstan"), to place the risk. Plaintiff claims that Morstan is Lloyds' agent; Lloyds (supported by Insurance Innovators) claims that Morstan is a wholesale broker which placed the risk with Insurance Innovators.[4] Morstan issued a binder to M.Z. which, M.Z. claims, demonstrates that Morstan was Lloyds' agent.

Although M.Z. did not notify Insurance Innovators of the alleged loss until February 9, 1995, Gheith, at plaintiff's direction, notified Morstan of the alleged burglary on January 25, 1995, five days after it occurred. It is undisputed that Morstan did not inform Lloyds of the claim, either directly or through Insurance Innovators, before Gheith notified Insurance Innovators on February 9, 1995. Plaintiff claims that the January 25, 1995 transmission to Morstan satisfied the policy's immediate notification provision. In the alternative, plaintiff argues that the twenty day delay in notifying Insurance Innovators did not violate this provision.

■ While the claim against FEMA arises under federal law, the claim against Lloyds implicates only New York law. Under New York law, an insurance broker is ordinarily an agent of the insured, not the insurer. *Matco Prods., Inc. v. Boston Old Colony Ins. Co.*, 104 A.D.2d 793, 480 N.Y.S.2d 134, 137 (2d Dep't 1984). Some action on the insurer's part, or facts from which a general authority to represent the insurer may be inferred, is required to convert a broker into the insurer's agent. *Id; Moshiko, Inc. v. Seiger & Smith, Inc.*, 137 A.D.2d 170, 172, 529 N.Y.S.2d 284, 286 (1st Dep't) (broker was not insurer's agent where, as Lloyds alleges here, broker had to call insurer's agent for authority to issue policy), *aff'd*, 72 N.Y.2d 945, 529 N.E.2d 420, 533 N.Y.S.2d 52 (1988). Absent exceptional circumstances, therefore, notice to a broker is not notice to the insurer. *Howard Fuel v. Lloyd's Underwriters*, 588 F.Supp. 1103 (S.D.N.Y.1984) (Sprizzo, J.) (interpreting New York law). In this case, Lloyds and Insurance Innovators deny that Morstan was Lloyds' agent, and the uncontroverted evidence demonstrates that Morstan had to contact Insurance Innovators for authorization to issue the policy binder. *Cf. Moshiko*, 137 A.D.2d at 172, 529 N.Y.S.2d at 286 (where broker had to call insurer's agent for authorization to issue policy, broker was not insurer's agent). Thus, M.Z. has failed to raise a triable issue regarding whether Morstan was Lloyds' agent.

---

**3.** Another justification for New York's strict interpretation of immediate notification provisions is the insurer's need timely to investigate the claim. Lloyds has asserted the alleged burglary may have been fraudulent. Labrie affid., Exh. A, at 2.

**4.** Insurance Innovators is Lloyds' authorized representative in the United States. Lloyds' underwriters are "non-admitted carriers" in the United States and, as such, cannot have agents in New York. According to Lloyds and to Insurance Innovators, Insurance Innovators is authorized to bind Lloyds underwriters to coverage.

■ In any event, the policy explicitly calls for notice to Insurance Innovators, and courts have construed these notice provisions strictly. *See, e.g., Heydt,* 146 A.D.2d at 499, 536 N.Y.S.2d at 773 (fact that insurer timely acquired independent knowledge of incident does not excuse late notice); *Furman,* 84 A.D.2d at 31, 445 N.Y.S.2d at 238 (timely telephonic notice insufficient where policy calls for written notice). Thus, Gheith's January 25, 1995 communication with Morstan did not constitute valid notice to Lloyds under the policy in any event.

The remaining question, then, is whether the February 9, 1995 notice to Insurance Innovators satisfied the policy's immediate notice provision. Under New York law:

An insurer's obligation to cover its insured's loss is not triggered unless the insured gives timely notice of loss in accordance with the terms of the insurance contract. Without timely notice an insurer may be deprived of the opportunity to investigate a claim and is rendered vulnerable to fraud. Late notification may also prevent the insurer from providing a sufficient reserve fund. For these reasons the right of an insurer to receive notice has been held to be so fundamental that the insurer need show no prejudice to be able to disclaim liability on this basis.

Notice provisions such as the one at issue [requiring notification "as soon as practicable"] have been uniformly interpreted to require that notice be given within a reasonable time under the circumstances. Although what is reasonable is ordinarily left for determination at trial, where there is no excuse for the delay and mitigating circumstances are absent, the issue may be disposed of as a matter of law in advance of trial. Relatively short periods of unexcused delay have been found unreasonable as a matter of law.

*Power Auth. of N.Y. v. Westinghouse Elec. Corp.,* 117 A.D.2d 336, 339–40, 502 N.Y.S.2d 420, 421–22 (1st Dep't 1986) (internal quotations and citations omitted). *See also White v. City of New York,* 81 N.Y.2d 955, 957, 615 N.E.2d 216, 217, 598 N.Y.S.2d 759, 760 (1993) ("[t]he requirement that an insured notify its liability carrier of a potential claim 'as soon as practicable' operates as a condition precedent to coverage."); *Security Mut. Ins. Co. of N.Y. v. Acker–Fitzsimons Corp.,* 31 N.Y.2d 436, 440, 293 N.E.2d 76, 78, 340 N.Y.S.2d 902, 905 (1972) ("[a]bsent a valid excuse, a failure to satisfy the notice requirement vitiates the policy, and the insurer need not show prejudice before it can assert the defense of noncompliance").

■ Although, under an immediate notice provision such as the one at issue, notice must be given within a "reasonable time," a delay of as little as ten days has been deemed unreasonable under New York law. *Haas Tobacco Co. v. American Fidelity Co.,* 226 N.Y. 343, 123 N.E. 755 (1919); *see also Rushing v. Commercial Cas. Ins. Co.,* 251 N.Y. 302, 304, 167 N.E. 450, 451 ("[i]n the absence of explanation or excuse, a notice of accident withheld for 22 days is not the immediate notice called for by the policy."). Valid explanations for delays in notification would include "absence from the state or lack of knowledge of the accident." *Id.; see Allstate Ins. Co. v. Furman,* 84 A.D.2d 29, 33, 445 N.Y.S.2d 236, 239 (2d Dep't 1981) ("[t]here are circumstances, such as lack of knowledge that an accident has occurred, that will excuse delay in giving notice."), *aff'd,* 58 N.Y.2d 613, 444 N.E.2d 996, 458 N.Y.S.2d 532; *Security Mutual,* 31 N.Y.2d at 441, 293 N.E.2d at 78, 340 N.Y.S.2d at 905. The burden of proof is on the insured to provide a valid explanation for delay. *Id.; Kreger Truck Renting Co. v. American Guar. & Liab. Ins. Co.,* 213 A.D.2d 453, 454, 623 N.Y.S.2d 623, 624 (2d Dep't 1995); *Heydt Contracting Corp. v. American Home Assurance Co.,* 146 A.D.2d 497, 498, 536 N.Y.S.2d 770, 772 (1st Dep't), *appeal denied,* 74 N.Y.2d 651, 540 N.E.2d 715, 542 N.Y.S.2d 520 (1989).

■ In light of this case law, it appears that New York courts would find M.Z.'s twenty-day delay in notifying Lloyds' agent a violation of the policy's immediate notification provision. While New York cases indicate that a notification delay may be excused on grounds either that the insured was unaware of the incident or that the incident could give rise to liability under the policy, the parties have not identified, nor has the

Court located, a single New York case excusing a notification delay on the ground that the insured mistakenly believed that the party it notified was the insurer's agent, or on any comparable ground. *See White,* 81 N.Y.2d at 957–58, 615 N.E.2d at 217, 598 N.Y.S.2d at 760; *Woolverton v. Fidelity & Cas. Co. of N.Y.,* 190 N.Y. 41, 82 N.E. 745 (1907) (insured's lack of knowledge of accident may excuse notification delay); *Kreger Truck Renting Co. v. American Guar. & Liab. Ins. Co.,* 213 A.D.2d 453, 623 N.Y.S.2d 623 (2d Dep't 1995) (question of fact existed as to whether insured's belief that incident could not give rise to liability was reasonable); *Heydt,* 146 A.D.2d at 499, 536 N.Y.S.2d at 772 ("plaintiff's assumption that other parties would bear ultimate responsibility for its property loss is insufficient as a *matter of law* to excuse the more than four month delay in giving notice") (emphasis added); *State Farm Mut. Auto. Ins. Co. v. Bush,* 46 A.D.2d 958, 362 N.Y.S.2d 220 (3d Dep't 1974) (insured's good faith belief that incident could not give rise to liability may excuse delay); *875 Forest Ave. Corp. v. Aetna Cas. & Sur. Co.,* 37 A.D.2d 11, 322 N.Y.S.2d 53 (1st Dep't 1971) (same), *aff'd,* 30 N.Y.2d 726, 283 N.E.2d 768, 332 N.Y.S.2d 896 (1972); *Marallo v. Aetna Cas. & Sur. Co.,* 148 N.Y.S.2d 378 (Sup.Ct. Westchester County 1955) (same); *American Sur. Co. of N.Y. v. Mariani,* 130 N.Y.S.2d 755 (Sup.Ct. New York County 1954) (insured's knowledge of accident precludes excuse for notification delay), *aff'd,* 286 A.D. 1083, 147 N.Y.S.2d 668 (1st Dep't 1955). Thus, M.Z. has failed to raise a genuine issue of material fact regarding the timeliness of its notification to Lloyds. Lloyds' motion for summary judgment is granted. Plaintiff's claim survives with regard to FEMA only.

SO ORDERED.